**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HILTON MINCY,** | : | **CIVIL ACTION NO. 1:05-CV-0273** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT, STATE** | : | |
| **CORRECTIONAL INSTITUTION** | : | |
| **MAHANOY, PENNSYLVANIA, et al.,** | : | |
| | : | |
| **Respondents** | : | |

**<u>MEMORANDUM</u>**

Presently before the court is a counseled petition for writ of habeas corpus

(Doc. 1) in which petitioner, Hilton Mincy ("Mincy")[1], challenges a Pennsylvania

state conviction.  For the reasons set forth below, the petition will be denied.

**I.    <u>Statement of Facts</u>**

The following statement, which is extracted from an opinion of the Superior

Court of Pennsylvania, succinctly sets forth the pertinent factual background:

> On September 19, 1997, at or around 8:30 p.m., appellant
> engaged in a verbal altercation with the victim, Albert Johnson,
> outside the Shamrock bar in Williamsport.  Both men wanted to
> fight and when appellant attempted to take off his watch, the
> victim took a swing at him but missed.  The victim's female
> companion intervened pushing the victim into her vehicle located
> nearby.  The vehicle containing the victim immediately left the
> scene but during the departure, appellant yelled, "this ain't over."
> N.T., 5/13/98, at 40-42.

---

[1]In this proceeding, petitioner is identified as "Mincy."  However, some of the
documents contained in the state court record identify him as "Mincey."

At or around 9:00 or 9:30 p.m., appellant and a companion arrived at the residence owned by Kariemma [sic] Morrison's mother located at 622 Second Street.  Present in the house at appellant's arrival were Karriema Morrison, her friend "Howey", and an unidentified friend of Howey's.   Immediately after appellant and his companion entered the house, the companion entered the kitchen and began asking Howey's friend whether he was Albert Johnson.  Appellant's companion eventually pulled a gun.  At this point, appellant intervened stating "don't shoot him, he ain't Albert." N.T., 5/12/98, at 23.  Appellant then looked around the house for Albert Johnson and interrogated Karriema Morrison regarding Albert Johnson's whereabouts.    Appellant and his companion soon left the residence; their stay extended approximately 15 minutes.

Shortly thereafter, or approximately 9:30 p.m., Albert Johnson was watching television and drinking beer at 750 Second Street when appellant and his companion kicked in the front door, the companion again with his gun drawn, and told the victim not to move.  Appellant demanded the whereabouts of the guns, cocaine, and money. Johnson answered that he had no idea what appellant was talking about.  Appellant began a search of the house. During the search, appellant had the victim lie on the floor and had his companion point the gun at the back of the victim's head. When the victim tried to roll over, the companion struck the victim in the head with a barrel of the gun. Appellant directed his companion to bring Johnson on their search of the upstairs. During this time, the victim continued to have the gun pointed at the back of his head.  In one upstairs bedroom, appellant began searching the drawers and again inquired where the guns were; the victim continued to plead ignorance.  After pulling out all of the drawers in the room and not finding guns, drugs, or money, appellant instructed his companion to "go ahead and bust him son". N.T., 5/11/98, at 39-40.  Under the impression that he was bout [sic] to be shot, Johnson pushed the companion away and attempted to flee down the steps.  The victim's escape failed as appellant's companion opened fire and repeatedly hit him.

Johnson was shot in three places: the chest, abdomen, and back.  Despite the gunshot wounds, he made it to a neighbor's house, who refused to assist, and he then wandered out towards the street.   Soon thereafter, the police were called and the paramedics summoned.   The victim was transported to the

emergency room.  The seriousness of his injuries required surgery and resulted in a colonostomy and the removal of a portion of his bowel.

On September 20, 1997, appellant was apprehended and charged with the following offenses:   attempted homicide, possession of a firearm, possession of an instrument of a crime, aggravated assault for causing serious bodily harm, aggravated assault for attempting or causing bodily injury with a deadly weapon, recklessly endangering another person, simple assault for attempting or causing bodily injury and simple assault for negligently causing bodily injury with a deadly weapon. Meanwhile, appellant's companion has not been identified or prosecuted.   On February 19, 1998, the trial court allowed appellant's information to be amended to include a count for criminal conspiracy.

A three-day jury trial commenced on May 11, 1998.  The jury returned a guilty verdict on the following:   attempted murder, aggravated assault for causing serious bodily injury, aggravated assault for causing bodily injury with a deadly weapon, conspiracy, and reckless endangerment of another person.   Appellant was acquitted of the charges for possessing a firearm and possessing an instrument of crime.

On September 28, 1998, appellant was sentenced to a period of state incarceration with a minimum term of 17 years and a maximum term of 40 years for attempted murder.  The court determined that the convictions for aggravated assault and recklessly endangering merged for sentencing purposes while the conspiracy count was an inchoate offense pursuant to the Pennsylvania Crimes Code, 10 Pa.C.S.A. §101 et seq., and did not justify an additional sentence.

(Doc. 9-2, pp. 1-5).

Following his sentencing, Mincy filed a motion to reconsider his sentence.

The trial court instructed him to wait until he was appointed appellate counsel to

file the motion.  Although appellate counsel was subsequently appointed, the

reconsideration motion was never re-filed.

3

Mincy then challenged his judgment of sentence in the trial court.  The trial court upheld the judgment on June 30, 1999.  (Doc. 9-7).  He appealed to the superior court raising the following relevant issues: whether trial counsel was ineffective for failing to conduct a proper investigation and to call witnesses; whether trial counsel was ineffective in failing to impeach the victim; and whether the trial counsel was ineffective in failing to object to the trial court's decision not to remove a juror who admitted reading about Mincy in a newspaper headline during the course of the trial.  (Doc. 9-2, pp. 5-6).  The judgment was affirmed on February 27, 2001.  (Doc. 9-2).  No petition for allowance of appeal was filed.  (Doc. 1, p. 2).

On October 22, 2001, Mincy filed a petition pursuant to the Post Conviction Relief Act ("PCRA").  Counsel was appointed and an amended petition was filed on March 25, 2002.  On June 26, 2002, the PCRA court notified the parties that it intended to dismiss the amended PCRA petition.  (Doc. 9-3).  An order of dismissal was entered on December 10, 2002.  (Doc. 9-4, p. 1).  Mincy timely appealed raising the following pertinent issues:  whether the PCRA court erred in denying Mincy's request to continue the hearing to develop the issue of trial counsel's failure to interview or call certain witnesses; whether the PCRA court erred in failing to grant the petition based on ineffective assistance of counsel, and whether the PCRA court erred in denying the petition in light of the fact that Mincy had filed a motion for reconsideration of his sentence and the lower court failed to accept his motion before appeal counsel was appointed.  On January 9, 2004, the superior court

4

affirmed the dismissal of the PCRA petition.  Mincy filed a petition for allowance of appeal.  On September 16, 2004, the supreme court denied allocatur.

The present petition was filed on February 8, 2005.

## II.   Claims presented in federal petition

In the instant petition, Mincy raises ineffective assistance of trial and appellate counsel, and abuse of discretion on the part of both the trial and PCRA courts.

### A.   Ineffective Assistance of Counsel

#### 1.   Trial Counsel

Mincy contends that trial counsel was ineffective for failing to investigate and call certain witnesses at trial, namely, Alicia and Erica (last names unknown), Shaquona Short (also known as Keshawn Mills), Hikeem Grady, Juay Brokenbaugh, and Jesus Flores.  (Doc. 1, pp. 4-8).  This issue was included in his direct appeal.  (Doc. 9-2).  The superior court, which considered the issue to be "vaguely" presented, stated that "we have not been directed to nor can we find any affidavit or objective proof that any non-called witness was willing to testify favorably, if at all.  We find appellant has failed to meet the above requirements for any named witness with his unsubstantiated allegations.  Commonwealth v. Lopez, 739 A.2d 485 (Pa. 1999); Commonwealth v.  Copenhefer, 719 A.2d 242, 254 (Pa. 1998)."  Id. at p. 12.

Mincy again raised the issue in the PCRA proceedings.  The PCRA court concluded that he was not entitled to relief because the issue was previously

5

litigated on direct appeal, 42 PA.C.S.A. § 9543(a)(3).  (Doc. 9-3, p. 6 (citing

Commonwealth v. Mincey, 1595 HBG 1998, at 11-13 )).  Moreover,  if the issue had

not been previously litigated, it would have been deemed waived since it could have

been raised on appeal, 42 PA.C.S.A. § 9544(b).  (Id.).  The PCRA court also noted

that, even if the issue was properly preserved, no evidentiary hearing would have

been necessary because the defense "failed to submit a certification from any of the

alleged alibi witnesses as required by Section 9545(d)(1)."[2]  (Id. at p. 7).  Mincy did

not pursue the issue during PCRA appellate proceedings.  (Doc. 9-16).

Mincy also argues that trial counsel was ineffective for failing to impeach the

victim, Albert Johnson, as to "his numerous inconsistencies and the recantation of

his previous statements."  (Doc. 1, p. 8).  However, not all of the alleged

inconsistencies set forth in his federal petition were presented to the state courts.

Specifically, Mincy did not raise counsel's failure to impeach the victim concerning

the location of his actual residence, or counsel's failure to expose the victim's

extensive criminal record, in the state court proceedings.

The remaining issues were presented both in the direct appeal and in the

PCRA proceeding.  On direct appeal, the superior court noted that although Mincy

---

[2]"Where a petitioner requests an evidentiary hearing, the petition shall
include a signed certification as to each intended witness stating the witness's
name, address, date of birth and substance of testimony and shall include any
documents material to that witness's testimony.  Failure to substantially comply
with the requirements of this paragraph shall render the proposed witness's
testimony inadmissible." 42 PA.C.S.A. § 9545(d)(1).  The court notes with interest
that the PCRA court afforded the defense additional time to secure affidavits or
certifications.

argues that there were inconsistent statements made by the victim, he failed to identify the nature of the statements.[3]  The court concluded that regardless of the substance of the inconsistent statements, which in all likelihood involved the victim's statements that he did not know whether the defendant or his cousin was the shooter, Mincy would still be accountable based on theories of accomplice or co-conspirator liability.  (Doc. 9-7, pp. 9, 10).

This issue was revisited during the PCRA proceedings.  At that time, the ineffectiveness claims relating to the failure to impeach the victim concerned the condition of the front door of the victim's cousin's apartment, whether shots were fired from the stairs, and the fact that the victim identified the companion as Mincy's cousin even though the victim did not see the companion's face.  (Doc. 9-4, p. 7).  The PCRA court found that "the trial's outcome was not prejudiced by these alleged inconsistencies because the record establishes that [Mincy] entered the apartment with the accomplice and shot the victim.  The amount of force used to gain entry, the exact location of the shooter(s), and [c]ompanion's actual identity affect only the manner which the crime was executed, not [Mincy's] guilt. "  (Doc. 9-4, pp. 7-8).

---

[3]The superior court adopted the trial court opinion on this issue.  (Doc. 9-2, p. 13) ("[T]he argument section does not set forth what should have been done on cross-examination or what the prior inconsistent statements were.  While other parts of the brief purport to show the bias of the victim and prior inconsistent statements, every such allegation was addressed at length and correctly by the trial court in its post-trial opinion.  Trial Court Opinion, 6/30/99, at 7-11.  We adopt that portion of the trial court's opinion refuting appellant's contentions of ineffectiveness.")

His contention that trial counsel was ineffective, for failing to challenge the victim's statement that he did not have drugs on his person the night of the shooting (Doc. 1, p. 10), was presented in the PCRA proceedings.  (Doc. 9-3, p. 10). Trial counsel repeatedly asked the victim on cross-examination whether there were drugs on his person during or after the incident.  (Doc. 9-3, p. 10, citing N.T., 5/11/98, at 52, 79, 84-85).  Further, the court observed that an appropriate method of impeachment would have been to call the witness or witnesses who found the drugs on the victim's person or were present when the drugs were found.  Although counsel did not pursue this issue in the manner suggested (albeit *post facto*), the PCRA court concluded that it would not have affected the outcome of the trial.  The PCRA court based its conclusion on the re-direct examination of Mr. Johnson, during which he testified that while "he was in the hospital he was in a lot of pain and he was not aware of anybody taking drugs from his person.  N.T., 5/11/98, at 85-87."  (Doc. 9-3, p. 11).

Mincy also raises two ineffectiveness claims with regard to witness Karriema Morrison ("Morrison").  (Doc. 1, pp. 11-13).  The claim that trial counsel failed to impeach Morrison, by suggesting that she was "high" on pills the night of the shooting and that she had written a letter to Mincy stating that she had been high, was also presented in the PCRA petition.  (Doc. 1, p. 11; Doc. 9-3, p. 8).  However, this issue was not pursued on appeal of the denial of the petition.

Mincy also argues that trial counsel was ineffective for failing to object to the prosecution's use of a prior statement to refresh Morrison's recollection. (Doc. 1, p. 11). In considering the argument, the PCRA court stated that prior to allowing a witness to have his or her memory refreshed, "[t]he proponent must establish that: 1) the witness's present memory is inadequate; 2) the writing or other aid could refresh the witness's memory and 3) the writing or other aid actually refreshes the witness's memory." (Doc. 9-4, p. 6). Mincy's argument failed because Morrison had conceded that she did not know whether Mincy's companion had a gun and she couldn't remember what she told police about the incident. She then read her statement, which refreshed her recollection. In addition, the witness was thoroughly cross-examined regarding any inconsistencies in her testimony. (Doc. 9-4, p. 7).

Mincy claims that trial counsel's failure to object to the trial court's refusal to remove a juror, who admitted reading a newspaper headline about Mincy's case, constituted ineffective assistance of counsel. (Doc. 1, p. 17). This issue was presented during the direct appeal and addressed by the superior court as follows:

> The trial court concluded that since the juror did not read the article, its contents could not have affected his ability to be a fair and impartial juror. Therefore, trial counsel was not ineffective for failing to object. Trial Court Opinion 6/30/99, at 10.

> We find the trial court's analysis consistent with precedent. Our situation is substantially similar to the facts in Commonwealth v. Reese, 352 A.2d 143 (Pa. Super. 1975) In Reese, two jurors read an article printed abut the defendant during the trial and were excused. Another saw the article or headline but immediately knew it was about the defendant and put it down. This juror was

> allowed to stay on the jury.  On appeal, the court stated that since
> no member of the jury that convicted appellant had read the article
> there was no prejudice to appellant.  Id. at 146-47.  As in Reese,
> nobody on the jury that convicted appellant had read the article
> and therefore, appellant suffered no prejudice.

(Doc. 9-2, p. 14).

Mincy contends that trial counsel was ineffective for failing to object to the

trial court's failure to dismiss a juror who witnessed him being escorted by the

sheriff or deputy.  (Doc. 1, p. 18).  This issue was not presented to the state courts.

Mincy also takes issue with trial counsel's failure to object to the trial court's

reference in the jury instructions to the alleged accomplice as Mincy's cousin.  (Doc.

1, p. 19).  The trial court pointed out that although the victim referred to Mincy's

companion as his cousin, other witnesses disputed this fact.  "In an attempt to avoid

confusion, the Court generally referred to this individual as the unknown black

male.  The Court never stated the other individual was, in fact, the defendant's

cousin."  (Doc. 9-3, p. 20).  On appeal, the superior court reasoned that Mincy was

identified as one of the assailants and the identity of the companion did not alter

Mincy's guilt.  (Doc. 9-4, p. 8).

### 2.  Ineffective Assistance of Appellate Counsel

Mincy raises a number of ineffective assistance of appellate counsel claims.

He contends that appellate counsel was ineffective in his handling of the direct

appeal in that he impliedly admitted Mincy's guilt, failed to preserve issues for

appeal, and erroneously argued that trial counsel was ineffective for failing to call

certain witnesses who, in fact, testified at trial.  (Doc. 1, p. 13). Neither of the latter

10

two issues was presented to the state courts.  Appellate counsel's alleged

ineffectiveness for impliedly admitting his guilt was presented in the PCRA petition

and considered by the PCRA court.   However, Mincy did not present this issue in

the PCRA appeal to the superior court.

He also avers that appellate counsel was ineffective for failing to raise trial

counsel's failure to object to the court's refusal to dismiss a juror who witnessed

Mincy being escorted by the sheriff or deputy sheriff.  (Doc. 1, p. 18).  This issue was

not presented to the state courts.

Lastly, Mincy claims that appellate counsel was ineffective for failing to raise

and preserve for review the trial court's reference to the accomplice as Mincy's

cousin while charging the jury.  (Doc. 1, p. 19).  As noted previously, the superior

court reasoned that Mincy was identified as one of the assailants and the identity of

the companion did not affect the finding of guilt.  (Doc. 9-4, p. 8).

## B.   Trial Court Abuse of Discretion

Mincy contends that the trial court abused its discretion by refusing to accept

his motion to modify/reconsider his sentence and by deferring any motions until the

appointment of appellate counsel.  (Doc. 1, p. 17).  This issue was rejected by the

superior court during the PCRA proceedings.  The superior court acknowledged

that Mincy timely filed a *pro se* motion to reconsider his sentence and that the trial

court instructed him to wait until he was appointed appellate counsel to file the

motion.  (Doc. 9-4, pp. 8-9).  The PCRA court deemed the issue waived pursuant to

42 PA. CONS. STAT. § 9544(b) because Mincy could have raised the trial court's

11

failure to address the motion to reconsider on direct appeal, but did not.  (Doc. 9-8,

pp. 1-2).  Mincy raised the issue in his appeal of the denial of PCRA relief and the

superior court also deemed the issue waived.  (Doc. 9-4, p. 8).

### C.    PCRA Court Abuse of Discretion

Mincy contends that the PCRA court's decision to deny his request for an

evidentiary hearing was an abuse of discretion.  (Doc. 1, p. 15).  The PCRA court

held an argument on the amended petition, in which Mincy sought an evidentiary

hearing.  (Doc. 9-3, p. 5).  Mincy failed to include a  certification of witnesses, as

required by 42 PA.C.S.A. § 9545(d), which states as follows:

> (1) Where a petitioner requests an evidentiary hearing, the petition
> shall include a signed certification as to each intended witness
> stating the witness's name, address, date of birth and substance of
> testimony and shall include any documents material to that
> witness's testimony. Failure to substantially comply with the
> requirements of this paragraph shall render the proposed witness's
> testimony inadmissible.

42 Pa.C.S.A. § 9545 (d)(1).  Notwithstanding this omission, counsel was afforded an

additional forty-five days to submit the required information.  Although Mincy

submitted his own affidavit, and letters dated November 9, 1997 and December 27,

1997, he failed to meet the requirements for an evidentiary hearing.

Mincy appealed the PCRA court's decision.  The superior court considered

the issue and stated as follows:

> There is no right to an evidentiary hearing pursuant to the
> PCRA.  Commonwealth v. Camps, 772 A.2d 70, 75 (Pa. Super.
> 2001).  When requesting an evidentiary hearing on this issue, the
> petitioner must include a signed certification as to each intended
> witness, including the witness's name, address, date of birth and

12

the substance of the proposed testimony.  <u>Commonwealth v. Brown</u>, 767 A.2d 576, 582 (Pa. Super. 2001).  Appellant has failed to provide this information, therefore his request was rightfully denied.

Moreover, Appellant is not eligible for PCRA relief on this previously litigated issue.  <u>See</u> 42 PA.C.S.A. § 9543(a)(3).  An issue has been previously litigated if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue.  <u>See</u> 42 PA.C.S.A. § 9544(a)(2).  The instant issue has already been rejected on direct appellate review.  <u>See</u> <u>Commonwealth v. Mincey</u>, No. 1595 Harrisburg 1998, unpublished memorandum at 11-13 (Pa. Super. filed February 27, 2001).

(Doc. 9-4, pp. 4-5).

## III.   <u>Discussion</u>

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the "fact or duration" of his confinement.  <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 498-499 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-8 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); <u>Estelle</u>, 502 U.S. at 67-8 (1991); <u>see</u> <u>also</u> <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>Johnson v. Rosemeyer</u>, 117 F.3d 104 (3d Cir. 1997).

### A.   <u>Habeas Exhaustion Requirements</u>

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or

circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351 (1989). Fair presentation also requires the petitioner to raise the claim in a procedural context in which the state courts can consider it on the merits. Id.

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); see Teague v. Lane, 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are considered procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 749 (1991); McCandless, 172 F.3d at 260; Lines, 208 F.3d at 160.

14

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims.  See McCandless, 172 F.3d at 260; Coleman, 501 U.S. at 750-51; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992).  To demonstrate cause for a procedural default, the petitioner must show that some objective external factor impeded petitioner's efforts to comply with the state's procedural rule.  See Murray v. Carrier, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, the petitioner must show "not merely that the errors created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions."  See United States v. Frady, 456 U.S. 152, 170 (1982).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000);  Wenger, 266 F.3d at 224.  The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent."  Murray, 477 U.S. at 496.

In the matter *sub judice*, Mincy failed to present to the state courts the following ineffective assistance of trial counsel claims:  failure to impeach the victim concerning the actual location of his residence and extent of his criminal record; failure to challenge "aggressively" the Commonwealth's theory of the case; and

15

failure to object to the trial court's decision not to dismiss a juror who, during the trial, witnessed him being escorted by the sheriff or deputy sheriff.  Mincy also failed to present to the state court the following issues of appellate counsel's ineffectiveness raised in the state courts:  failure to raise the issue of trial counsel's failure to object to the trial court's refusal to dismiss a juror who, during the trial, witnessed him being escorted by the sheriff or deputy sheriff raised in state court (Doc. 1, pp. 18-19);  failure to preserve issues for appeal; and wrongly arguing that trial counsel was ineffective for failing to call witnesses who, in fact, testified at trial (Doc. 1, p. 13).

In addition, Mincy failed to exhaust the claims that trial counsel was ineffective, for failing to cross-examine witness Kariemma Morisson about whether she was under the influence of narcotics on the night in question, and that appellate counsel was ineffective for impliedly admitting Mincy's guilt.  (Doc. 1, pp. 11-13). While both of these issues were presented in the PCRA petition and considered, Mincy did not pursue these issues in the PCRA appeal.

Procedural rules bar Mincy from pursuing these issues in state court.[4]

Accordingly, he has procedurally defaulted on these claims and the court may not

consider the merits unless he establishes "cause and prejudice" or a "fundamental

miscarriage of justice" to excuse his default. <u>McCandless</u>, 172 F.3d at 260. Mincy

has not even averred cause for or prejudice by the default and he has not

demonstrated his actual innocence such that a lack of review by the court would

constitute a fundamental miscarriage of justice. <u>Id</u>. Consequently, he is precluded

from pursuing federal habeas corpus relief with regard to all of these itemized

issues.

Mincy also seeks relief on the ground that the trial court abused its discretion

by not considering and granting his *pro se* motion to modify/reconsider his sentence

and that this denial was in violation of his due process and procedural rights. (Doc.

1, pp. 17-18). This issue was not preserved for review. Mincy first raised the issue

in his appeal to the Pennsylvania Superior Court from the trial court's denial of his

PCRA petition. Under Pennsylvania law, the claim is deemed waived because it

could have been raised at an earlier stage in the proceeding. 42 PA. CONS. STAT.

---

[4]The time period for filing a second PCRA has expired. <u>See</u> 42 PA. CONS. STAT. § 9545(b)(1) (setting for a one year limitations period). Mincy raises no argument, and the record suggests no possibility, that his claims fall within an exception to the limitations period for filing a petition under the PCRA. <u>See</u> 42 PA. CONS. STAT. §9545(b)(1) (permitting petitions to be filed more than one year after judgment if the failure to raise the claim is attributable to government interference, the facts underlying the claim could not have been ascertained previously, or the claim involves rights newly recognized and retroactively applied by the Supreme Court).

§ 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding").  Indeed, the superior court refused to address the issue because it was raised for the first time in his appellate brief on collateral review.  Thus, this claim is procedurally defaulted based upon an "independent and adequate ground".  Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Slutzker v. Johnson, 393 F.3d 373, 381 (3d Cir. 2004); Barnhart v. Kyler, 318 F.Supp.2d 250, 257-259 (M.D. Pa. 2004).  Moreover, because he has not alleged "cause and prejudice" or a "miscarriage of justice," review of this procedurally defaulted state claim is foreclosed.

The claims that were properly exhausted for federal habeas corpus purposes will now be addressed on the merits.

### B.   Habeas Claims

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was "contrary to" federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme

18

Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an "unreasonable application" of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id. Further, factual determinations made by the state court are "presumed to be correct." 28 U.S.C. § 2254(e)(1). A petitioner may only rebut this presumption with "clear and convincing evidence" of the state court's error. Id.; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005).

> 1.   Ineffective Assistance of Counsel

To sustain a claim for ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient and that this deficient performance prejudiced his or her defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984).[5] In evaluating whether counsel's performance was deficient, the court must defer to counsel's tactical decisions, avoiding "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness. See id. at 689; Gov't of the Virgin Islands v. Weatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996).

---

[5] The performance and prejudice prongs of Strickland may be addressed in either order, and, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Strickland, 466 U.S. at 697.

Mincy does not take issue with the state court's application of federal law. Rather, he contends that the state court decisions were based on unreasonable determinations of the facts in light of the evidence presented in state court.  See 28 U.S.C. § 2254(d)(2).

(a) Trial Counsel

Mincy contends that the decision concerning the failure to investigate/call witnesses was based on an unreasonable determination of the facts in light of the evidence presented in state court because he has established that the witnesses existed, that they were willing to testify, that counsel knew or should have known of their existence, and that the absence of their testimony prejudiced him.  (Doc. 1, p. 6).  This claim is without merit.  In considering the issue during the direct appeal, the superior court stated as follows:

> To prevail on an ineffectiveness claim, appellant must plead and prove the following: (1) the claim is of arguable merit; (2) counsel's performance was unreasonable; (3) but for counsel's act or omission the outcome of the proceedings would have been different.  Commonwealth v. Henry, 706 A.2d313, 323 (Pa. 1997).  Further, if the ineffectiveness claim is for failing to call a witness, appellant must also show: (1) the witness existed; (2) the witness was available to testify; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness' testimony was so prejudicial as to have denied the defendant a fair trial.  Id. at 329.

(Doc. 9-2, pp. 11-12).  As in Part I, *supra*, Mincy failed to supply the court with any affidavit or objective proof that the alleged non-called witnesses were willing to testify.  Further, when he took his second bite at this apple during the course of the

PCRA proceedings, the court reiterated that "[t]he defendant's own affidavit only creates a factual issue with respect to counsel's knowledge; it does not establish any of the other requirements." (Doc. 9-3, p. 8). Specifically, "[t]he defendant's affidavit asserts that Hikeem Grady, Jesus Flores, Juay Brokenbaugh, and Kim Rhodes told him that Johnson stated he would not testify if the defendant paid him $5,000. However, these statements are hearsay. The defense needed to provide a certification from Grady, Flores, Brockenbaugh or Rhodes to get Johnson's statement into evidence at a PCRA hearing." (Doc. 9-3, p.8, n. 4). "As in the defendant's direct appeal, there is no objective proof that any non-called witness was willing to testify favorably, if at all." (Id. at p. 8).

Review of the state court opinions (Docs. 9-2, 9-3, 9-7), and Mincy's state court briefs (Docs. 9-15, 9-16), confirms that there simply was no evidence submitted in support of the requirement that he demonstrate that the witnesses were available and willing to testify, *via* affidavits or otherwise. He is not entitled to habeas relief on this claim.

Mincy also argues that the state court decision concerning the victim's "numerous inconsistencies and the recantation of his previous statements" was unreasonable because his pretrial statements concerning the identity of the shooter and his testimony at trial were "internally self-contradictory." (Doc. 1, pp. 8-9). This claim is without merit. The court concluded that regardless of the substance of the inconsistent statements, Mincy would still be accountable based on theories of accomplice or co-conspirator liability. (Doc. 9-7, pp. 9, 10). There is no indication

that this conclusion was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding such that Mincy would be entitled to relief on this ground.

Also related to the victim's testimony is Mincy's contention that trial counsel was ineffective for failing to interview and call the hospital attendant concerning drugs found on the victim at the hospital.  He is not entitled to relief on this claim either.  Trial counsel repeatedly questioned the victim during cross-examination about the drugs.  On re-direct examination the victim stated that he was in a lot of pain at the hospital and was not aware of anyone taking drugs from his person. This testimony led the court to conclude that calling the witnesses would not have affected the outcome of the trial.  Further, the responding police officer testified that plastic bags containing what appeared to be crack cocaine were retrieved from the victim's clothing.  (Doc. 9-11, pp. 61-63).  Mincy fails to convince that the state court's conclusion was contrary to the evidence presented.

The court now turns to the testimony of witness Kariemma Morrison. Review of Morrison's trial testimony affirms that the PCRA court's conclusion was based on a reasonable determination of the facts in light of the evidence presented. When questioned by the prosecution about the gun, Morrison could not recall whether Mincy's companion had a gun, but informed the prosecutor that reviewing the transcript of her interview with the police officer would refresh her recollection. (Doc. 9-11, pp. 22-23).  She then testified on direct examination about her encounter with Mincy and his companion, the fact that they were looking for the victim, the

22

possession of a gun and the commotion surrounding the shooting. (Id. at pp. 23-32).

During cross-examination, she testified that she did not actually see the gun but, rather, her friend, who was also present, told her that there was a gun. (Id. at p. 40). On redirect, she conceded that she did not inform the police officer who took her statement that her knowledge of the gun was not first-hand knowledge. (Doc. 9-11, p. 48). In fact, during the interview, she gave the officer a description of the gun that was used that night. (Id.). The court finds no error with the use of this witness' prior statement.

It is also averred that trial counsel was ineffective for failing to object to the trial court's refusal to remove a juror who admitted reading a prejudicial newspaper headline about Mincy. He argues that, even though the juror did not read the contents of the article, the juror was exposed to a prejudicial headline stating that he was charged with unrelated crimes and trial counsel's failure to object constituted ineffective assistance. (Doc. 1, p. 17). The record reflects that the juror saw the bold print headline but did not read the contents of the newspaper article; there is no indication that the headline, in and of itself, was prejudicial. (Doc. 9-13, pp. 2-3). Hence, Mincy fails to demonstrate that the court's conclusion was based on an unreasonable determination of the facts in light of the evidence presented. Therefore, he is not entitled to relief on this ground.

Relief will also be denied with respect to the claim that trial counsel was ineffective for failing to object to the trial court's reference in the jury instructions to Mincy's cousin as the actual shooter. It is Mincy's position that by referring to

23

the shooter as his cousin, "the Court improperly and prejudicially linked the Petitioner to the shooting and undermined the defense of alibi." (Doc. 1, p. 20).  He contends that the court clearly referred to "the Defendant's cousin" as "the unknown black male," making it interchangeable and placing Mincy at the scene of the shooting.  (Id.).  He further contends that there was no evidence that the actual shooter was Mincy's cousin.  (Id.).

This issue was pursued in the PCRA proceedings and there was no prejudice found.  The evidence of record supports this finding.  In referring to Mincy's accomplice in the jury instructions, the trial court made the following statements:

> "Let me say to you that the Commonwealth's theory is that the Defendant on this evening was working in a conspiracy with - - I will refer to the other individual as an unknown black male. There's been some reference whether he was a cousin or not of the defendant."   (Doc. 9-10, p. 51).

> "Now my final instruction on the conspiracy concept, I do want to point out to you to if you do believe the Defendant's cousin or the unknown black male committed the crime or crimes. . . ." (Doc. 9-10, p. 55).

The trial court clearly indicated that there was contradictory evidence concerning whether the accomplice was Mincy's cousin and therefore, alternatively identified the individual as "an unknown black male." (Doc. 9-10, p. 51).  As noted by the PCRA court, the trial court never expressly stated that the accomplice was, in fact, Mincy's cousin.  Further, as recognized by the superior court, Mincy was clearly identified as one of the assailants and the identity of the companion did not alter Mincy's guilt.  Accordingly, his request for relief on this ground will be denied.

24

(b)     Appellate Counsel

He also argues that appellate counsel was ineffective for failing to raise and preserve the issue of the trial court's improper reference to Mincy's cousin as the actual shooter in the jury instructions.   As noted above, because the trial court never stated that the accomplice was, in fact, Mincy's cousin, there is no merit to this claim.

2.     PCRA Court Abuse of Discretion

Mincy argues that the PCRA court erroneously denied his request for an evidentiary hearing because "[w]hen a prisoner alleges the ineffective assistance of counsel and makes credible allegations against counsel, he has a right to an evidentiary hearing in order to prove his claims."  (Doc. 1, p. 15).  It is unclear whether Mincy is mounting a challenge based upon Section 2254(d)(1) or (d)(2).  For the sake of completeness, the court will evaluate the argument under both standards.

Mincy fails to cite to a single case in support of his argument.  Consequently, he is unable to to establish that the state courts' decisions to deny him an evidentiary hearing were contrary to, or involved unreasonable applications of, clearly established Federal law, as determined by the Supreme Court of the United States.  Despite Mincy's failure to meet his burden, review has been undertaken of Pennsylvania statutes, and the court has been unable to find any statutory support for Mincy's contention.  Nor has the court located a single case that suggests that a post-conviction court's decision not to hold an evidentiary hearing, when

requirements set forth by statute are not met, is in violation of clearly established Federal law.

With respect to the evidence presented, the PCRA court based its denial of an evidentiary hearing on Mincy's failure to comply with the procedural requirements set forth in 42 Pa.C.S.A. § 9545 (d)(1).  It is undisputed that he failed to provide the required information, and he does not argue otherwise.  Mincy therefore is not entitled to relief.

Although the PCRA court decided not to hold an evidentiary hearing, the ineffective assistance of counsel claim was considered, and the court concluded that Mincy was not eligible for relief because the issue was previously litigated, 42 Pa. Cons. Stat. § 9544(b).  (Doc. 9-3, p. 6).  Specifically, trial counsel's failure to investigate or call witnesses was rejected on the merits during the direct appeal. The PCRA court's conclusion was affirmed by the superior court on appeal.

**IV.**   **<u>Conclusion</u>**

Based on the foregoing determination that a portion of Mincy's claims are procedurally defaulted, and that the remaining claims (which are fully exhausted and properly considered on the merits) are meritless, the petition for writ of habeas corpus will be denied.

An appropriate order will issue.

  /s/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:        May 18, 2006

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HILTON MINCY,** | : | **CIVIL ACTION NO. 1:05-CV-0273** |
| | : | |
| **Petitioner** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **SUPERINTENDENT, STATE** | : | |
| **CORRECTIONAL INSTITUTION** | : | |
| **MAHANOY, PENNSYLVANIA, et al.,** | : | |
| | : | |
| **Respondents** | : | |

## ORDER

AND NOW, this 18th day of May, 2006, upon consideration of the petition for

writ of habeas corpus (Doc. 1), and for the reasons set forth in the accompanying

memorandum, it is hereby ORDERED that:

1.  The petition for writ of habeas corpus is DENIED.

2.  The Clerk of Court is directed to CLOSE this case.

3.  There is no basis for the issuance of a certificate of appealabilty.  See
    28 U.S.C. § 2253(c).


   /s/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge